

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2017

## DEBEORA D. WHITFIELD v. HOLLY THRASHER SCHROEDER

Direct Appeal from the Circuit Court for Sumner County
No. 83CC1-2015-CV-485     Joe Thompson, Judge

———

### No. M2016-00791-COA-R3-CV

———

This appeal involves an option to purchase real estate. After a bench trial, the circuit court awarded the tenant a judgment for $12,000. Because the trial court did not make sufficient findings of fact and conclusions of law to enable meaningful appellate review, we vacate the order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and THOMAS R. FRIERSON, II, JJ., joined.

Charles R. Bobbitt, Jr., Hendersonville, Tennessee, for the appellant, Holly Thrasher Schroeder.

Joseph T. Zanger, White House, Tennessee, for the appellee, Debeora D. Whitfield.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Holly Thrasher Schroeder ("Landlord") owned approximately three acres of real property in Sumner County containing a residence, three outbuildings, and a pond. She rented the property to various tenants over the years, and in 2014, she advertised that it was available for rent with a lease-purchase agreement. Debeora Whitfield, Michael Whitfield, and Benjamin Martin (collectively, "Tenants")[1] inquired about the property. After visiting the property, Tenants met with Landlord and her husband at a restaurant and executed a two-year lease and an "Option to Purchase Real Estate." The lease

---

[1]The relationship among the tenants, if any, is not apparent from the record.

occupancy term and the option period were both to commence on the date of signing, March 11, 2014, and end on March 31, 2016.[2]

The Option to Purchase required a "Non-Refundable payment" of $15,000 in exchange for the exclusive and irrevocable option to purchase the "real estate and other property located in Sumner County, Tennessee, which real estate is commonly known as 108 Brooks Lane, Portland, TN . . . and including all improvements thereto either permanently installed or which belong to or are used in connection with the real estate, wherever located[.]"  An additional payment of $15,000 was due one year into the option period, on April 1, 2015.  In other words, $15,000 was to be paid in "each and every year the option-to-purchase [was] in effect."  At the date of closing, Landlord was to deliver a general warranty deed to the real estate and possession of it.  The Option to Purchase provided that

> If Purchaser does not exercise this option for any reason, including any default as described below, then the NON-Refundable Option Consideration shall be retained by Vendor as consideration for the granting of the option to purchase, it being understood by Purchaser that the Option Period, to purchase the Real Estate, and is, in all cases in which Purchaser does not exercise the option to purchase, no matter what the circumstances or causes[,] NON-Refundable.

The purchase price of the property was set at $199,900.  Tenants would receive "non-refundable credits" of $200 toward the purchase price for each monthly lease payment that was made on time, but the credits would be forfeited as "non-refundable Option Consideration" if not used for the purchase of the property.  Tenants paid the $15,000 option payment for the first year on the date the documents were signed.

---

[2]This Court has explained the meaning of an option as follows:

> "An option is a unilateral contract whereby the optionor for a valuable consideration grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; the optionor is bound during the life of the option, but the optionee is not.  It is a continuing offer to sell irrevocable during the option period.  Its transition into a contract to purchase can be effected only by an unqualified unconditional acceptance in accordance with the terms and time specified."

*Kwasniewski v. Lefevers*, No. M2012-01802-COA-R3-CV, 2013 WL 3964788, at *4 (Tenn. Ct. App. July 30, 2013) (quoting *Jones v. Horner*, 260 S.W.2d 198, 199 (Tenn. Ct. App. 1953)).  "Option contracts limit the offeror's ability to revoke an offer."  *P & N Dev. v. Church*, No. E2009-01122-COA-R3-CV, 2010 WL 3025546, at *2 (Tenn. Ct. App. Aug. 4, 2010) (citing *Restatement (Second) of Contracts* § 25 (1981)).  They "bind the offeror during the life of the contract as the option is irrevocable during that time."  *Id*. (citing *Am. Oil Co. v. Rasar*, 308 S.W.2d 486, 490 (Tenn. 1957)).

Ten months later, in January 2015, Tenants and Landlord met again to discuss the Option to Purchase. As we will explain in greater detail hereinafter, the parties dispute what took place at this meeting. Basically, Tenants claim that they learned for the first time during this meeting that Landlord did not intend to convey any of the three outbuildings on the property because they were added to the premises by prior tenants, and Landlord did not own them. Conversely, Landlord claims that Tenants simply wanted out of the contract because they could not afford it. In any event, that day, Tenants informed Landlord that they did not intend to exercise the Option to Purchase, and they sought a return of the $15,000 option payment they made when they executed the documents in March 2014. Landlord refused to return the money, and Ms. Whitfield, one of the three tenants, sued Landlord in general sessions court for breach of the Option to Purchase.

The general sessions court ruled in favor of Ms. Whitfield and entered a judgment against Landlord for $15,000. Landlord appealed to circuit court, and a bench trial was held on February 5, 2016. The only witnesses to testify were Ms. Whitfield and Landlord. Ms. Whitfield testified that the three outbuildings on the property consisted of a "dock house" by the pond, a large oblong building near the house that looked like a one-car garage with an office area, and "a funky blue looking shed." She testified that the dock house was old and in horrible condition when they moved in but that Tenants "redid" the dock house with extensive repairs and improvements. Ms. Whitfield testified that Landlord and her husband saw the improvements and commented about how nice the dock house looked without objection or mention of the fact that she did not own the dock house. Ms. Whitfield testified that Tenants used the large oblong building for their lawnmowers and storage, but they did not use the third building because it was in such poor condition.

Ms. Whitfield testified that Tenants intended to exercise the option to purchase the property and made efforts to secure a loan in order to buy it. However, she said they were not able to secure the loan because the bank disagreed with them about the value of the property. Again, the purchase price was roughly $200,000. Ms. Whitfield testified that when the bank declined to loan them that amount, she had an appraisal performed, and the property appraised for only $150,000. She testified that the bank refused to finance the loan based on the appraisal.

Ms. Whitfield testified that Tenants met with Landlord and her husband in January 2015 (as referenced above) to discuss the Option to Purchase. According to Ms. Whitfield, the purpose of the meeting, in her mind, was to inform Landlord that the appraisal was only $150,000 and to see if they could "work something out." Ms. Whitfield testified that during the course of their discussion, Landlord made a statement to the effect that "the buildings don't go with it. I don't own them. I can't sell you

3

anything I don't own." Ms. Whitfield testified that she was very upset at this news because she had been maintaining and improving the buildings with the intent to purchase them. She was also upset because the property was not worth the price. As noted above, Ms. Whitfield informed Landlord that day that she did not intend to exercise the Option to Purchase and wanted the $15,000 payment returned. Ms. Whitfield denied telling Landlord that she could not afford the property.

Landlord's account of the events was vastly different. She claimed that Tenants informed her that they could no longer afford the property and that they wanted their option payment back in order to buy a smaller home. Landlord testified that the first time she heard any mention of Tenants' reason for not exercising the option being linked to the outbuildings was during Tenants' testimony in general sessions court.

Landlord claimed that she told Ms. Whitfield when the documents were signed that the dock building was permanently attached to the property and therefore it would be included with the sale of the house. Landlord testified that the dock house was built by a prior tenant but that she considered it to be part of the real estate because it was attached to a pre-existing dock that "went with the property." She denied ever telling Tenants that the dock house would not be included in the sale.

Landlord acknowledged, however, that the status of the other two outbuildings was unclear. She testified that the other two buildings had been on the property for seven to eight years and were placed there by former tenants. Landlord did not believe that Tenants utilized the other two outbuildings and thought they had remained locked since the prior tenants left them there. When asked who owned the outbuildings at the time of trial, Landlord replied, "Good question." She said "it's a gray area" and "honestly, I don't know." The day before trial, Landlord had been advised by her attorney that she probably owned the two buildings due to abandonment. However, Landlord testified that she had been involved in prior litigation with those former tenants around 2010 and obtained a judgment against them for unpaid rent. She testified that the trial judge in that proceeding had instructed the parties not to remove the buildings in case they were needed as an offset against the judgment.[3] Landlord testified that the case with her former tenants was not yet finished and that the matter remained unresolved at the time of trial.

Although Landlord acknowledged the existence of this outstanding issue regarding ownership of the two outbuildings, Landlord testified that she was never told by Tenants that they were refusing to exercise the Option to Purchase because of the buildings.

---

[3]Landlord estimated that the long garage-type building was worth about $5,000 and that the shed was worth nothing. She testified that the former tenants also sought the right to remove the dock house but that the judge said they could not take it because it was attached to the property.

Landlord said she did not know that Tenants used those buildings or cared anything about them.  She said if she had known that the buildings were an issue, she would have contacted an attorney long ago to try and determine their status.  Landlord also claimed that she told Tenants when they originally executed the documents that those outbuildings were to remain locked because they belonged to prior tenants.  Landlord said she did not include a written provision regarding the outbuildings in the option contract because she verbally told Tenants about the situation.

Landlord testified that she had previously entered into three other contracts with options to purchase this particular property, but none were completed.  She testified that her previous tenants paid only $3,000 for their option to purchase the property, rather than $15,000.  She testified that the former tenants did extensive damage to the property and that she increased the amount of the option payment thereafter in an attempt to deter tenants from damaging the property.

The trial court entered its written order on March 14, 2016.  The court clarified at the outset that the only claim at issue was Tenants' attempt to recover the $15,000 payment made for the Option to Purchase.  The court noted that the Option to Purchase covered the property known as 108 Brooks Lane "and included all improvements thereto, either permanently installed or which belong to or are used in connection with the real estate."  The trial court found that all three of the outbuildings were either attached to the real estate or used in connection with the real estate, and therefore, "all three buildings fall within the definition of real estate contained in the Option to Purchase."  The order then states that the trial court had "concerns about the testimony" of Landlord as it related to the ownership of the buildings, and it found "no consistent testimony" about whether she owned them "or what her understanding of the ownership of the buildings was as they relate to the Option to Purchase."

Next, the trial court recounted the sums paid by Tenants for the Option to Purchase, including the $15,000 lump sum payment and $200 from each monthly lease payment.  The court found the amount paid was "an unjust price that results in unjust enrichment to [Landlord]," and "there is no reason to require the forfeiture of fifteen thousand dollars ($15,000.00) for a lease agreement that lasted for 12 months."  The trial court noted Landlord's testimony that her previous renter only paid $3,000 for an option to purchase the property.  The court found "this is a reasonable price for the Option to Purchase the Real Estate based upon the evidence presented."  The trial court entered judgment in favor of Ms. Whitfield for the sum of $12,000.  Landlord timely filed a notice of appeal.

## II. ISSUES PRESENTED

Landlord presents the following issues for review on appeal:

1.      Whether the trial court incorrectly applied the doctrine of unjust enrichment when a valid and enforceable contract existed;

2.      Whether the trial court erred in finding that the lease agreement lasted for a twelve-month period when the terms of the lease proscribed a twenty-four-month period;

3.      Whether the trial court erred by considering parol evidence;

4.      Whether the trial court erred when it incorrectly determined that the consideration for the option was excessive.

For the following reasons, we vacate the trial court's order and remand for further proceedings.

## III. DISCUSSION[4]

### A.      Unjust Enrichment and the Existence of a Contract

The first issue we address is Landlord's contention that the trial court erred in applying the doctrine of unjust enrichment when a valid and enforceable contract existed. In response to this issue, Tenants argue that the trial court actually made "the opposite

---

[4]We begin by noting that Landlord's brief does not contain a single citation to the appellate record. Tennessee Rule of Appellate Procedure 27(a) provides that the brief of the appellant shall contain a statement of facts "with appropriate references to the record" and an argument section with "appropriate references to the record."  Rule 6(b) of the Rules of the Court of Appeals of Tennessee further provides:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Landlord's brief demonstrates no attempt to comply with these rules.

The record in this case is unusually small, with the technical record, transcript, and exhibits totaling only 139 pages.  Thus, we have exercised our discretion to waive the briefing requirements in order to adjudicate the issues presented for review.  See Tenn. R. App. P. 2; *Voigt v. Plate*, No. E2016-00473-COA-R3-CV, 2017 WL 776093, at *6 (Tenn. Ct. App. Feb. 28, 2017) (*no perm. app. filed*).  We may not do the same in the future.

finding" regarding the validity of the contract. They interpret the trial court's ruling to mean that the Option to Purchase was either breached or deemed void or unenforceable because of the issue regarding the disputed ownership of the buildings. Tenants argue that the trial court implicitly concluded that the Option to Purchase was invalid due to the lack of ownership in the buildings, and therefore, the court should have ordered Landlord to return the entire amount of the $15,000 option payment rather than only $12,000.

We agree that the trial court's order is unclear as to its ultimate reasoning. For clarity, we quote from the order at length:

1. . . . The only matter before the Court is the [Tenants'] claim for recovery of the fifteen thousand dollar ($15,000.00) down payment made as part of an option to purchase real estate that was entered into between the parties on March 11, 2014.

2. The Option to Purchase Real Estate was for property known as 108 Brooks Lane in Portland, Sumner County, Tennessee and included all improvements thereto, either permanently installed or which belong to or are used in connection with the real estate.

3. Paragraph 6 of the Option to Purchase Real Estate states that at the date of closing, the vendor shall execute and deliver a general warranty deed conveying the real estate to the purchaser in an as-is condition. . . .

. . . .

5. The Court finds that the three buildings in addition to the residence, are either attached to the real estate or were used in connection to the real estate. There is agreement that the dock house is permanently installed to the real estate. There was no testimony that any of the buildings lie outside the boundaries of the real estate. Evidence shows a concrete pad leading up to the oblong building on the side of the house as an entrance. It is clear to the Court that all three buildings fall within the definition of real estate contained in the Option to Purchase.

6. The Court has concerns about the testimony of the Defendant as it relates to the ownership of the buildings other than the residence on the property. There was no consistent testimony about whether she owned them or not, or what her understanding of the ownership of the buildings was as they relate to the Option to Purchase.

7

7.     The Lease Contract called for a monthly payment of seventeen hundred dollars ($1700.00), and the Option Contract contained a provision that two hundred dollars ($200.00) a month of that lease payment was a non-refundable credit toward the purchase of the property.

8.     The addition of the sum of fifteen thousand dollars ($15,000.00) paid over twelve months comes to an addition[al] one thousand, two hundred and fifty dollars ($1,250.00) which made the total rent payment for the property almost three thousand dollars ($3,000.00) per month[]. Testimony established the value of the property is between one hundred and fifty thousand dollars ($150,000.00) and two hundred thousand dollars ($200,000.00). The Court finds a monthly payment of almost three thousand dollars ($3,000.00) on the property to be an unjust price that results in unjust enrichment to the Defendant.

9.     The Court finds there is no reason to require the forfeiture of fifteen thousand dollars ($15,000.00) for a lease agreement that lasted for 12 months.

10.     The defendant further testified that she was using the fifteen thousand dollars ($15,000.00) to protect against damages to the property, and that she had set the price of the Option to Purchase for a previous renter, who did not exercise the Option, at three thousand dollars ($3,000.00). The Court finds that this is a reasonable price for the Option to Purchase the Real Estate based upon the evidence presented.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Court's judgment is for the Plaintiff in the amount of twelve thousand dollars ($12,000.00).

Through the first six paragraphs of the order, it appeared that the trial court was prepared to hold that Landlord had breached the Option to Purchase, or that it was void or otherwise unenforceable, due to her apparent lack of ownership of the buildings that she had agreed to convey in the parties' agreement. However, the court only expressed "concerns about the testimony of the Defendant as it relates to the ownership" and said it found "no consistent testimony" about that issue. Then, without stating any legal conclusions or analysis regarding the validity of the Option to Purchase, the trial court moved to a discussion of the amount of the payment and found that "there is no reason to require the forfeiture of fifteen thousand dollars" for a twelve-month period. The court found that $3,000 was "a reasonable price for the Option to Purchase[.]" As a result, it is unclear whether the trial court concluded that Landlord *was* entitled to enforce the Option

8

to Purchase and retain a reasonable sum due to Tenants' failure to complete the purchase of the property, or whether the trial court found the Option to Purchase unenforceable on some legal ground.[5] The confusion is only compounded by examining the trial court's oral ruling, wherein the judge stated:

> When it all comes down to it, what I'm mostly concerned about is the element of unjust enrichment. Unjust enrichment is a legal theory in which a court may impose a contractual obligation *where one does not otherwise exist*, and courts are permitted to impose that obligation *when there is no contract between the parties or a contract has become unenforceable or invalid*; and, two, the defendant will be unjustly enriched absent a quasi contractual obligation.
> . . . .
> But in this case causing forfeiture of the entire $15,000, it amounts to an unjust enrichment of the plaintiff -- of the defendant. I'm sorry. So what I found is that that *contractual obligation* became unjust to the defendant when she kept the $15,000.

(Emphasis added.) In sum, we cannot discern the trial court's reasoning or actual conclusion regarding the ownership of the buildings and the validity or invalidity of the Option to Purchase. We cannot review the correctness of the trial court's ultimate conclusions if we cannot identify those conclusions or the trial court's reasoning.

Tennessee Rule of Civil Procedure 52.01 provides, "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." According to the Tennessee Supreme Court,

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 219–223 (3d ed.2005) [hereinafter 9C *Federal Practice and Procedure*]. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See Estate of Bucy v. McElroy*, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3-4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27,

---

[5]Ms. Whitfield's civil warrant from general sessions court alleged breach of contract, but during opening statements at trial in circuit court, her attorney also asserted that Landlord's failure to disclose pertinent facts meant that the contract could be voided pursuant to Tennessee Code Annotated section 66-5-208.

2012) (same); *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004) (same); 9C *Federal Practice and Procedure* § 2571, at 219 (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C *Federal Practice and Procedure* § 2571, at 221-22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. *Hardin*, 2012 WL 6727533, at *5.

. . . There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." 9C *Federal Practice and Procedure* § 2579, at 328.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013).

Here, this Court and the parties were "left to wonder" about the basis of the trial court's decision due to a significant gap in its findings. *In re K.H.*, 2009 WL 1362314, at *8. Without sufficient findings of fact and conclusions of law, we are unable to conduct meaningful appellate review. *In re Estate of Bostic*, No. E2016-00553-COA-R3-CV, 2016 WL 7105213, at *5 (Tenn. Ct. App. Dec. 6, 2016) (*no perm. app. filed*). We accordingly vacate the trial court's order and remand for entry of an order that contains sufficient findings of fact and conclusions of law. *See, e.g.*, *Acuff Int'l, Inc. v. Sanyo Mfg. Corp.*, No. W2013-01146-COA-R3-CV, 2014 WL 346661, at *5 (Tenn. Ct. App. Jan. 30, 2014) (remanding for findings when the trial court's order was "unclear as to the basis of its ruling" and failed to clarify the trial court's reasoning).

## IV. CONCLUSION

For the aforementioned reasons, the decision of the trial court is hereby vacated and remanded for further proceedings. Costs of this appeal are taxed one-half to the appellee, Debeora D. Whitfield and one-half to the appellant, Holly Thrasher Schroeder, and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE